IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| CONNIE ROSKA, JAMES ROSKA, RUSTY ROSKA, JESSICA ROSKA, MARIA STEWART,<br><br>Plaintiffs,<br><br>v.<br><br>MELINDA SNEDDON, SHIRLEY MORRISON, COLLEEN LASATER,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 1:99CV112DAK |

This matter is before the court on Defendants Melinda Sneddon, Shirley Morrison, and Colleen Lasater's Motion for Summary Judgment on Compensatory Damages. The court held a hearing on the motion on September 21, 2006. Plaintiffs were represented by Steven C. Russell, and Defendants were represented by Peggy E. Stone. Having fully considered the motion, memoranda, affidavits, and exhibits submitted by the parties and the law and facts relevant to this motion, the court enters the following Order.

### BACKGROUND

On May 28, 1999, Defendants Sneddon and Morrison, who are DCFS caseworkers, accompanied by a police officer, removed Rusty Roska, a then-twelve-year-old boy, from his

family's custody without notice or a pre-deprivation hearing.  On June 3, 1999, a shelter hearing was conducted pursuant to the requirements of Utah removal statutes.  The judge at the shelter hearing determined that the removal was proper.  However, the next day, at a further proceeding in the case, the judge ordered Rusty to be returned to his parents' custody with significant intervention and oversight by DCFS.

Rusty suffered from what appears to be unknown ailments.  His mother made several comments to school workers and doctors that caused concern, including statements that Rusty had a hole in his esophagus, that Rusty had deadly parasites, and that Rusty suffered from a rare disease that only few people in the world had.  School workers also provided Defendant Morrison with documents that Rusty's parents had his appendix removed for no reason and that it was suspected that his mother suffered from Munchausen Syndrome by Proxy ("MSP").  The case workers apparently relied on several of these comments in making their decision to remove Rusty from his parents' custody.

The case workers also contacted Rusty's treating physicians.  Two of the doctors, who had previously treated Rusty at the UCLA Pain Clinic, expressed to Morrison that Rusty's parents had not fully complied with treatment regimens.  However, Rusty's main treating physician was opposed to Rusty being taken from his parent's custody and stated that it would be more harmful to Rusty than leaving him in his parent's custody.

The caseworkers, Sneddon and Morrison, contacted their supervisor, Colleen Lasater, and asked for her advice.  Despite the treating physician's statements, Lasater supported Sneddon and Morrison's decision to remove Rusty from his home.

This case is a civil rights action brought by Rusty Roska, his parents, and his siblings.

The case is on remand from the Tenth Circuit.  *See Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003).  Judge Benson initially granted qualified immunity to all of the state defendants and dismissed the case.  The Tenth Circuit reversed and remanded the case.  The Tenth Circuit found that the Plaintiffs had stated a claim for a deprivation of a liberty interest in their family relationship when Rusty was taken from their custody without a warrant or pre-deprivation hearing and that such a right was clearly established.  The only issue with respect to qualified immunity was whether the state actors acted objectively reasonable in light of the legal rules that were clearly established at the time the actions were taken.

On remand, this court determined that the attorney was entitled to absolute immunity but the case workers, Sneddon and Morrison, and their supervisor, Lasater, did not act objectively reasonable in light of the statutory requirements and their failure to give weight to the opinion of Rusty's treating physician.  The State appealed the court's decision denying qualified immunity and the Tenth Circuit affirmed.

## DISCUSSION

### Defendants' Motions for Summary Judgment

Defendants argue that Plaintiffs are not entitled to compensatory damages for the deprivation of their liberty interest in familial association as a matter of law because the undisputed facts show that the deprivation would have occurred anyway.  The United States Supreme Court has concluded that when a procedural due process violation occurs and a deprivation of a right results, damages for injuries caused by the deprivation of the right may not be recovered if the defendant can prove the deprivation would have occurred even absent the procedural violation. *Carey v. Piphus*, 435 U.S. 247, 254 & 257 (1978) *Carey*, 435 U.S. at 260.

"[I]n such cases, the failure to afford procedural due process could not properly be viewed as the cause of the [deprivation of the right.]" *Id.*

In this case, Defendants assert that although Plaintiffs were not given a pre-deprivation hearing, they did receive notice of and fully participate in a shelter hearing that resulted in Rusty's continued placement in DCFS custody.  Defendants contend that Plaintiffs were able to prepare for the shelter hearing and, unlike most shelter hearings, the hearing included live witness testimony in addition to evidence that was proffered by counsel.  The result of the shelter hearing is undisputed–the placement of Rusty into protective custody was upheld and continued.  Therefore, Defendants argue that the interference with or deprivation of Plaintiffs' liberty interest in familial association would have occurred anyway, even if Plaintiffs had been afforded a pre-deprivation hearing.

Plaintiffs contend that the juvenile court's decision at the shelter hearing is irrelevant with respect to their claim for compensatory damages because the juvenile court did not consider the treating physician's letter, Defendants misled the juvenile court as to the treating physician's role and concerns about removal, and the juvenile court returned Rusty to his parents' custody the following day based on a sworn affidavit from the treating physician.  Plaintiffs assert that had the juvenile court known what Defendants knew on the day of the seizure–that Dr. Gooch did not want Rusty removed–Plaintiffs would have prevailed at the shelter hearing.

Defendants had an obligation to provide relevant information to the juvenile court judge at the shelter hearing and the evidence demonstrates that they failed to do so.  During the shelter hearing, Defendants did not explain Dr. Gooch's role in treating Rusty and omitted relevant communications between Dr. Gooch and Morrison.  The Tenth Circuit referred to this conduct in

4

denying qualified immunity.  To rely on that same conduct to preclude compensatory damages because of a ruling based on that misconduct would be inappropriate.

The hearing the day after the shelter hearing demonstrates that if the Plaintiffs had been given a fair hearing with full disclosure to the judge of all the relevant evidence from Dr. Gooch prior to the removal, no removal would have occurred.  The result would have been substantial involvement and monitoring by DCFS – exactly what this court and the Tenth Circuit found the statute required.  Therefore, the court concludes that there is no basis for finding that the shelter hearing precludes an award of compensatory damages.  Accordingly, the Defendants' reliance on *Carey* is misplaced.

Defendants further contend that Plaintiffs are not entitled to compensatory damages as a result of Rusty's placement into protective custody because the alleged damages are not the result of a deprivation of a right to a hearing and have not been properly identified in discovery.  Although Defendants complain that Plaintiffs have never identified any actual damages actually arising from the lack of a hearing instead of Rusty's placement into protective custody, the court finds Defendants' distinction with respect to damages unworkable.  Plaintiffs have identified actual damages arising from the violation of their due process rights.   The lack of a full and fair pre-deprivation hearing led to the removal of the child.  The expert reports from Dr. Nilsson demonstrate the trauma associated with taking a child from their parents, and the court concludes that there is sufficient evidence with respect to the trauma suffered by Plaintiffs for the issue to be presented to a jury for its determination.

## CONCLUSION

Based on the above reasoning, Defendants' Motion for Summary Judgment on

Compensatory Damages is DENIED.

DATED this 11th day of October, 2006.

_____
DALE A. KIMBALL
United States District Judge